Our first case is Appeal No. 22-1057, Pickett v. McDonough. Mr. Carpenter, are you ready? I am, Your Honor. Thank you very much. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. David Pickett. Oh wait, before you start, I'm sorry that I have to, if we could stop the clock for a second, I have one request. Could you provide the Court with a copy of what you refer to on page 11 of your opening brief as Mr. Pickett's October 2007 claim? I believe it's also referenced at Appendix 54. Sorry, what page? It's on your brief at page 11, and you refer to it as Mr. Pickett's October 2007 claim. I don't think we have it in the appendix. Oh, I will double check, Your Honor, but I honestly think I couldn't find it, which is why it's not in the appendix. That was referred to in the Court's decision as the date of receipt, and so I would love, if it is, if there is one, I would be happy to provide it. I think it's referenced at also page 54 of the appendix, where it's referred to as Mr. Pickett's claim for increased evaluation that was received on October 1. Yes, yes. It would be helpful if we could get a copy of that document. I'd be happy to provide it if it's in the materials. Okay, thank you, Mr. Carpenter. Okay, again, I am in the unusual circumstance this morning of not asking that this Court create a jurisprudence or precedent. To the contrary, I'm asking this Court to find that the Veterans Court did not follow this Court's jurisprudence. Mr. Carpenter, if I could, just at risk of being a Johnny OneNote. That's okay. To get back to that document, that October 2007 document, and correct me if I'm wrong, it's not mentioned in the Board decision. I don't think it's in your brief before the Veterans Court, and I didn't see it referenced in the decision of the Veterans Court, and isn't discussed in any of those places. But then at pages 11 or 10 through 12, I guess, of your opening brief here, it's the focus of the whole argument, the 2007 claim that you refer to, and then it disappears, and we don't see it again. It's not referenced anywhere else in your brief or in the reply brief, and the government doesn't talk about it. What is that all about? It's the springboard for your argument, but we don't hear from it again. Well, it really isn't the springboard for my argument. It seems to be. Well, Your Honor, it relates back to what is identified as a claim made for CAD by Mr. Pickett. But how is it made for CAD? Because the CAD didn't come in until after the NEMR issue, right? That's when the CAD- Well, unless I have my order of proceedings out of order, I thought that that was the basis for the NEMR inquiry. No, NEMR. Double. As I understood it, this was a claim, this was something that was submitted in October of 2007 to increase the PTSD compensation, and then we don't have NEMR, I think, until 2009. And I was just trying to understand what all this discussion is at those pages about this 2007 claim when we don't hear about it again or see it again. It is referenced in the rating decision of December 28, 2007. Right. And that's in the joint appendix at 54- 54 to 57. How does it relate to your argument before us today? It relates in this way, Your Honor. When the ultimate grant is made of service connection for CAD based upon the NEMR review, the effective date assigned was the date of the original claim for PTSD. We make no assertion that he explicitly asserted entitlement to CAD, but that's what the VA found was the effective date. And the only way you can find effective date is the date of the claim. So there is a favorable disposition by the government, by the VA, that there was a claim made in 2004 for both PTSD and, by implication, CAD. And the way that that's relevant, Your Honor, is that under the NEMR settlement and the ultimate VA regulations implementing it, that settlement requires a review when there is something new added and the CAD was something added. And then you have to examine whether or not there was an earlier claim made in order to assign the effective date. And so the VA implicitly did that when they assigned the effective date for the CAD, which in our view then ties those two issues into the same original claim in 2004. I hear what you're saying. My only trouble is that I'm having a hard time when you're talking about the claim in 2004. Why do we need to know about the claim in 2007 if your effective date is 2004? Because that was the date that the, what's the right word, Mr. He sought an increase in the compensation that he'd been given in 05. That's correct, which was a product of the 04 grant and then ultimately resulted in an assignment of an increased rating and then he proceeded with the implications for TDIU as he pursued that matter. But then independently of his pursuit, the VA under the NEMR review requirements decided that they would review for CAD, granted it, but made the grant not from the date of when Mr. Pickett asked for it, but from the date of his original claim in 2004. And the only connection there is the notation that Mr. Pickett made in his original application that he was a Vietnam-era veteran, that he served in Vietnam. So that's the only conceivable implication. So are you trying to tell us about all these things to kind of build a claim stream, for lack of a better phrase? Is that part of it? Yes, Your Honor, that the action in NEMR creates a continuous claim stream because when they granted ultimately the CAD, they had to combine it with the existing rating. And I think my recollection is that they assigned a 10% rating for each and gave a combined rating of 20% for those two conditions as the initial rating. So that shows clearly that the VA was treating these as part of an original claim stream that started in 2004. And yes, these are extraordinary circumstances and not within what we would call the traditional adjudicatory cycle. But the reality is that this is the nature of VA adjudications, that they are intended to be proclaimant. And this is one of the ways in which they are proclaimant, is to take that opportunity to recognize that there is something fundamentally correct in granting it from 2004 rather than the date that he specifically asked for it. And by doing that, that inextricably ties his original 2004 claim to the claim presented here. So can I ask you now, your main contention on appeal, as I understand it, is that the board decision in January 2013 and April 2014 didn't follow our caseload. Maybe Bond and Barod? Bond and Barod, yes. Treating, identifying the new and material evidence, right? Or saying that they, what are you, what exactly do you think they didn't do that they should have done? I believe that this court's precedent in Bond and then reinforced in Barod clearly articulate a two-step requirement for the secretary. That the secretary, upon receipt of new and material evidence, and the Veterans Court in the decision on appeal, agreed that the board had made an error by saying that it hadn't received new and material evidence based upon the 8940 or the TDIU application that was received. And the board itself found that the receipt of the Social Security records was new and material evidence that was received. The second part of the test under Bond and Barod is that upon receipt, the secretary shall make an assessment as to whether or not the new and material evidence received, and now we have a finding that there was new and material evidence received, must be assessed to determine whether or not that evidence relates back to the original claim. In this case, we believe that 2004, for service connection for both of these conditions and the appropriate rating, the maximum rating that's available under law. Now, as I recall, say the January 2013 decision did list the TDIU, the alleged new and material evidence, as evidence that was of record or considered. Yes. What do you think Bond and Barod require beyond that? That once received, and I don't believe that fact is in dispute that the VA received it, they have to make a determination as to whether or not it's new and material, and then whether or not that new and material evidence relates back. And what Barod reinforces is the initial statement in Bond that until that assessment is done, that original claim remains pending as a matter of law. And if it's pending, then the board can't do something without a decision by the secretary. And the decision by the… Are there certain words that you think need to be in there to know that an assessment has been made? I'm sorry, Your Honor. Are there specific words that you're looking for to say that, yes, now an assessment has been made? In the language of Bond, I believe the, as it were, magic words are… So you do believe there are certain magic words that need to be there in order to say an assessment has been made? Yes, because Bond established the interpretation of 3.156B. And then we had to wait several more years to get Barod because the Veterans Court and the agency were doing a workaround the requirements of Bond. And what Barod reinforced was is until you make that explicit, I'm trying to find the language here. Yes, Barod says the VA must provide a determination that is directly responsive to the new submission. And by directly responsive, they have to say we've got it, it is or isn't new in material, and it does or doesn't relate back to the original claim. And until they do that… What about the language in Bond or Barod that says, absent any indication in the record that the analysis occurred, you know, what if there's an indication? For example, here, the argument is that because the evidence is listed in the board's decision, just as being evidenced along with other evidence, that means that they considered it or thought it was part of the record and then it related back. They weren't going to say, oh, this is new evidence we're not going to consider because it wasn't timely filed, right? Instead, they, by considering it, they acted as if it had been in the record all the time. And isn't that all that the regulation requires? Oh, absolutely not, Gerard. Not as interpreted by this court in Bond. Bond was a new claim, according to the VA, that was treated by the VA as a new claim. This court in Bond said, regardless of the label, whether you treat it as a new claim or not and adjudicate it as a new claim, you haven't met the requirements of your own regulation. This is a regulation without a statutory predicate in which the secretary has decided, under his 501A authority, to write a regulation that it was mandatory that when he receives new and material evidence, his adjudicators are required to make this assessment.  That is the precedent that was created in order to make an assessment that is outlined by the very language used by the secretary in his regulation, as interpreted by this court. Just one quick question because time is fleeing. You've been discussing with Judge Stone, Judge Cunningham, the January 13, April 04 documents. If we agree with you on your reading of those documents in Bond and Barod, you win. If we don't agree with your reading, do you lose? Is that the end of the case? I don't want to overstep my bounds here, Your Honor, but I do not believe that this panel has the authority to make that contrary determination. Because what I read in this court's precedent is that this is a mandatory assessment, not an optional assessment or an implicit assessment. I understand what you're saying, but if we read it the way you do, you would say you win, right? But what if we read it differently, do you lose? Well, I don't know how a panel of this court can read the language of a precedential decision differently without going in Bond. Hypothetically, let's say we even went in Bond. Let's say we did that. What would your answer be to Judge Shaw's question? That the en Bond court most certainly can decide whether or not there are holes, if you will, or exceptions, or the ability to do it implicitly or essentially, the terms used by the court in both Davis and in this case, as a non-formal way of doing what's required. What about Gudinas? I mean, does Gudinas foreclose your argument here? Gudinas says, in a recent non-presidential opinion, we held that Bond Barreau do not require the board to make explicit findings as to 3.156B when determining the effective date. We agree with the court, that's the Jordan case, that the board need not explicitly determine whether a claim constitutes new and material evidence relating to a previous claim. So, does that foreclose your argument here?  Why not? That, unfortunately, was counsel in Gudinas, and I believe that that decision was predicated on a different set of facts about what triggered that obligation. Here, we have a favorable finding by the board that new and material evidence was received. Now, they said it was only the Social Security records and not the TDIU, but then Judge Bartley said, no, they were wrong. The TDIU was new and material evidence. The question for this panel is, upon receipt, what is the obligation of the secretary? Not the board. The board only reviews decisions. They're an appellate body. There has to be a determination under Bond and Barraud by the secretary in the first instance. But again, Mr. Garner, does this case turn entirely, one way or the other, on the 2013 document, the 2014 document, and Bond and Barraud? My difficulty in responding to that is that, certainly, the application of law to fact answer is yes. But in my view, or at least I've been told repeatedly for decades, that I don't get to argue application of law to fact to this court. That I can only argue what the law says or doesn't say. That this court is obligated to interpret statutes and regulations by mandate from Congress. I'm saying to this panel, this court has done it not once, but twice, and when they did it, they did it unequivocally. They had no implicit exceptions. And they said that that's the obligation of the VA, not the obligation of the board. So I'm asking this court to read Bond and Barraud as interpretations of the law and find, as a matter of law, the decision made in this court is contrary to that precedent. I see I'm way over my time. Thank you very much, Your Honor. Good morning, Your Honors, and may it please the court. I'll start with counsel's last point, which is that this court doesn't have jurisdiction to review harmless error determinations like the raised here. At the Veterans Court, the only thing that the Veterans Court did was cite 3.156B, cite the case Bond and Barraud in full, direct quotation, and then apply the law to the fact of the case. Let me ask you one question, a little different from the jurisdictional argument. In Mr. Pickett's brief, he argues at pages 14 through 15 of his opening brief that his claim is about the maximum benefit sought. And then he continues at pages 12 through 17 of his reply brief, indicating that there's no limitation on the scope of the claim. You're familiar with that? Correct. What is the government's response to that? Because he says in his reply brief that the government doesn't respond to this scope of the claim issue, I'll call it by way of shorthand. So what is the government's response today to that argument? The government's response is assuming that his claim from 2004 was still active when he submitted his September 2011 form, which that's the form that he alleges constitutes new and material evidence. So say the 2004 claim was extended somehow and was live and active all the way to the 2011 form that he submitted. Well, that claim ended after the government's January 2013 and April 2014 decisions that the veteran never appealed. So even assuming there was this active claim, which the Veterans Court did, it gave the veteran the benefit of the doubt and said the January 2013 claim considered whether it related all the way back to April 2004. And the April 2014 decision considered the January 2011 claim as it relates back to 2004. So even assuming it was active this whole time and he had this very long claim stream, he never appealed either of the government's determinations, so they became final. Isn't it his view that they're not final because the regulation wasn't satisfied? That's correct. If the regulation is satisfied, though, to Your Honor's question, the claim stream ended. And so that's the end of this case. And to Judge Stoll's question, the claim stream did end because the board did, in fact, comply with 3.156B. The only thing that 3.156B and Bond and Brew require is an express determination as to whether new and material evidence relates back to the open claim. You would say that compliance was accomplished by April of 2014. Absolutely. Perhaps by the January. That's the date you would hang your hat on. For sure, Your Honor. And your basis for that is the listing of the evidence, the listing of the evidence considered by the board. In part, it's the listing of the board. It's the board's note that they're considering an ongoing claim. So that shows, different from Bond, that it's not considering a new claim. It's considering an ongoing claim. So it's that, what Your Honor said, the listing of it. It's also the determination on the merits. It cites the exact language that's raised in the September 2011 form. And so there's clearly a determination on that form. And then it clearly denies that in both the January and the April determinations. Is there something that should have been done by the Secretary before then? Because what I'm hearing today is that it's not just the board. The Secretary has to have made some sort of determination. Your Honor, there's really no authority to support that argument. I would note, though, that the January 2013 and the April 2014 were rating decisions that were made by the regional office. So it's not as though this just happened on appeal. There were actual rating decisions that were made. The argument here is that Bond requires something more. And the government agrees with the appellant here that this system, 3.156B, is supposed to be pro-claimant. And that's exactly what it is. Here, the Veterans Court assumed all of the facts to be in the veterans' favor. It said, let's assume this claim stream was going all the way back to 2004 up until 2011. And then the Veterans Court said, but at some point, the claim stream has to end. And, of course, it ended when there was no appeal of either the January or the April decision. And so now when we're in 2017, there's just simply nothing to relate back to for the effective date. Do you agree that they don't need to explain whether the evidence is new and material if they consider the evidence in the merits? Do you kind of agree with that? Yes, Your Honor. And I think the reason for that is in Bond, for example, the VA didn't consider it was new and material. And the effect on the veteran was that his effective date couldn't relate back to the active claim stream. So they only considered it for a new claim. Here, on the other hand, we did, the VA did, in fact, consider whether it related back to the open claim stream. And so there wasn't a similar prejudice to the veteran here as there was in Bond because the new effective date wasn't the new claim. So, yes, it's important that the Veterans Court or the VA consider whether there's an open claim stream and consider whether the new material evidence relates to that. It's exactly what happened here in this case. Mr. Carpenter. Okay, I'll go and then you go, of course. So one thing that I heard from Mr. Carpenter was that there were some magic words that were needed. Can you respond to that for me? Yes, Your Honor. I would first point the court to the statute, which doesn't require any sort of magic words. I would also point the court to the Bond and the Barreau decisions, which also don't require magic words. What is clear in both of those cases, interpreting 3.156B, is that there has to be a determination on the alleged new and material evidence. And so if, like in broad, where the VA actually never considered, in writing at least, the new and material evidence, then this court said, we're not going to implicitly, we're not going to presume that the VA considered it. There actually has to be a determination. In this case, however, we have two determinations. We have the January 2013 and the April 2014. So no, there certainly doesn't have to be magic words. There does have to be some substantive analysis or at least consideration of the evidence that's submitted. Did both of the opinions have a substantive analysis? You said the first one did. Did the second one as well? The April 2014, yes. And it also spoke to the same thing in reference to January 2011. Just to give the veteran the full benefit of the doubt to Judge Shaw's question, sure, we can rely just on the April 2014 one because it addressed September 2011 expressly. But actually, both of them do, and neither of them were appealed. And so that's when the claim stream ended. So we would submit that this court doesn't need to even get to the marriage determination because there's that jurisdictional argument too. The court here, the veterans court, it didn't analyze, it didn't interpret 3.156B. It simply said 3.156B applies, which was undisputed by both parties. So you're talking about the jurisdictional issue. But it does seem as if on appeal here, we're being asked to interpret 3.156 and see if it requires special words beyond just identifying the evidence and treating the evidence. That would be an interpretation, right? That would be, Your Honor. But I don't think that the court needs to get there because the magic words argument wasn't argued at the veterans court. That's, of course, Appellant's argument now. But also, Ms. Akers, what about the fact that in the colloquy that the court had with Mr. Carpenter, there seemed to be a lot of discussion about Bond and Barad. Doesn't that suggest that we have a legal question there in terms of how you correctly interpret those two decisions and what they require and what, if anything, Gudinas subsequent has added to that? So aren't we really, as evidenced by the discussion we've had here today, faced with a legal issue in terms of what those cases say? I would say, Your Honor, that it is first incumbent upon the court to look at what the veterans court did, which, of course, would be the jurisdictional hook here. The veterans court didn't interpret 3.156B. And so if the veterans court didn't make the interpretation, then there's really no regulatory interpretation for this court to review. Did the court mention Bond and Barad? Yes, Your Honor. So they did look at that. And if we're being asked to see what the correct reading of it is, isn't that a legal question? The court, Your Honor, cited Bond and Barad and quoted the Davis case that we're going to argue in a moment. Just one sentence. It says 3.156 requires an express determination. It was an exact quote. And then it applied that law. It didn't interpret, but it applied that law to the facts of this case to ultimately conclude that it was fulfilled. And so that's a direct application of law to fact. But even if the court were to reach the merits of this case, 3.156B doesn't require magic words. It doesn't require anything more than an express determination as to the new and material evidence. And that's exactly what the veterans court did here. So there was no error. Thank you. Thank you. Mr. Carpenter, I'll give you three minutes if you need it. I was a little confused by the government's reference to a statute. I'm not aware of any statute in this case. There is only a regulation. And that regulation, and she may have just misspoke. But I think it's critical to remember that we're only dealing with a regulation here. And it's also important that when the VA amended this regulation, it gave subsection B a new title. And that new title is pending claim. So the title informs us that the inquiry under B is whether or not there is a pending claim. And the last phrase of the regulation says, will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. Therefore, the magic words are, and the inquiry is, was there or wasn't there a pending claim? And the only way, as instructed by Bond and Barad, to make that determination is to determine whether new and material evidence has been received. That's not an issue in this case. The board, even on one leg, said there was. But once they made that favorable finding, then it was up to the secretary to determine whether or not that new and material evidence related back. That is the language of Bond. That is the reinforcement in Barad, which says until then. How would that change the outcome here? I'm sorry? How would that change the outcome here? If there was an express statement by the secretary saying, yes, I agree. Because it's appealable, Your Honor. Well, the April 2014 decision was appealable also. Yes, Your Honor. But at that point, there hadn't been the new and material evidence submitted. It's the submission after the decision within the specified framework of either within the first year. Well, then, wasn't the new and material evidence was prior to the 2014 decision? Because the new and material evidence is the TDIU form, isn't it? Right. It was submitted in 2011. But that's part of what informs the whole history of this claim. And that the issue was raised as part of the appeal by Mr. Pickett of the original rating assigned for his CAD. And, yes, there were decisions in the interim that denied TDIU. But the question was when he finally got counsel and counsel submitted that TDIU application, was that or wasn't that new and material evidence? So you're not arguing that there would have been a different outcome other than the claim would have been remained pending? Is that kind of what you're arguing? I'm trying to just— Well, yes, Your Honor. Because if the claim is pending from 2004, then it must be adjudicated as to whether or not there was entitlement to the maximum rating available under law from 2004 that would cover both PTSD and would cover the CAD, but most importantly would cover the issue of TDIU as it relates to the combined effects of both. Any more questions? No, I'm all done. Mr. Carpenter, thank you for your time and thank you both counsel. The case is submitted.